IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD M. MAHER, :
:
    Petitioner, :
:
v. : CIVIL NO. 3:CV-08-0411
:
SUPERINTENDENT RAYMOND M. : (JUDGE VANASKIE)
LAWLER, ET AL., :
:
    Respondents. :

## MEMORANDUM

### Introduction

    Richard M. Maher, an inmate presently confined at the State Correctional Institution, Huntingdon, Pennsylvania (SCI-Huntingdon), filed this pro se petition for writ of habeas corpus. Named as Respondents are SCI-Huntingdon Superintendent Raymond Lawler and the Pennsylvania Board of Probation and Parole (Parole Board).[1] By Order dated December 8, 2008, Maher's motion requesting that his habeas corpus proceedings be stayed pending disposition of his mandamus action by the Pennsylvania state courts (Dkt. Entry # 2) was denied as moot.

    Petitioner claims entitlement to federal habeas corpus relief on the basis that the Parole Board violated his due process and equal protection rights when considering his eligibility for

---

[1]The only properly named respondent in a federal habeas corpus action is the applicant's custodial official. See 28 U.S.C. § 2242. Superintendent Lawler is Petitioner's custodial official for purposes of § 2242.

reparole. (Dkt. Entry # 3 at 1.) Specifically, he challenges the Parole Board's October 27, 2007 decision which concluded that he would not be recommended for reparole in part because of his failure to participate and complete a sexual offender program. He asserts that this determination was unwarranted because "he has never been convicted of any sex crime." (Id. at 2.) Maher further asserts that by applying a 2000 sex offender statute to his parole application, the Parole Board committed an ex post facto violation. As relief, Petitioner seeks his immediate release on parole.

## Background

The following facts were taken from an undisputed declaration submitted under penalty of perjury by George John Koontz, Director of Case Management for the Parole Board. According to Koontz, Maher initially pled guilty to a charge of robbery with a firearm and was sentenced to a 6 to 23 month term of imprisonment. (Dkt. Entry # 10-2, ¶ 2.) He was granted parole on December 6, 1974. Thereafter, Petitioner pled guilty to 4 robberies and 2 counts of escape, at the same time he entered a plea of nolo contendre to a fifth charge of robbery. He was sentenced to a 3 to 10 year term of imprisonment. Maher was paroled on May 7, 1983 after completing service of his minimum sentence.

Petitioner was arrested in the state of Virginia while on parole, and charged with committing 4 more robberies. (Id. at ¶ 6.) Based upon those new charges, his possession of a firearm in the commission of a crime, and unauthorized flight to Virginia, Maher was also

charged with being a technical parole violator. In February of 1985, Petitioner was convicted on 2 counts of robbery and sentenced to consecutive 10 to 20 year terms of imprisonment. He was paroled for a third time on August 3, 1999.

Petitioner was arrested in November of 1999 on multiple new charges, including forcible compulsion of involuntary deviant sexual intercourse. (Id. at ¶ 9.) Maher eventually pled guilty to a charge of simple assault and the remaining charges were withdrawn. He received a one (1) year term of probation. On February 24, 2003, Petitioner was again paroled. Four months later, however, he was again recommitted.

Maher was paroled for a fifth time in March of 2006. A condition of his parole required that he undergo an evaluation to assess any need he may have for sex offender treatment. (Id. at ¶ 11.) As part of that process, Maher agreed to take a polygraph test regarding the circumstances of his November, 1999 arrest. The results of the testing indicated that he had been deceptive. Petitioner was also evaluated by a board certified psychiatrist.[2] (Id. at ¶ 12.) Based upon the polygraph test results and the psychiatrist's report, the Parole Board concluded that Petitioner should participate in a sex offender's program as a condition of his parole.

On March 6, 2007, Maher was recommitted for once again violating the conditions of his

---

[2] Respondents have submitted a declaration under penalty of perjury by SCI-Huntingdon Psychological Services Specialist Timothy Sisto, who states that due to the sexual nature of Petitioner's November 1999 arrest he was evaluated by a psychologist who recommended that Maher "receive high intensity treatment." (Dkt. Entry # 10-4 at ¶ 5.)

parole. Among the parole conditions violated by Maher was his failure to complete the sex offender treatment program. (Id. at ¶ 13.)

By decision dated October 27, 2007, the Parole Board denied Petitioner reparole based upon a negative recommendation from the Pennsylvania Department of Corrections (DOC), reports, evaluations and assessments concerning his mental condition that reflected that he would pose a risk to the community, his interview with a Parole Board representative, and his need to complete additional institutional programming. (Dkt. Entry # 10 -3 at 2.) The decision added that at Maher's next parole review, the Parole Board would consider whether he had successfully participated in a sex offender treatment program, received a favorable DOC recommendation, maintained a clear conduct record, and completed the DOC prescriptive programs. (Id. at 2.)

Following the denial of his reparole request, Petitioner filed a petition for review with Pennsylvania's Commonwealth Court, asserting an ex post facto claim. (Dkt. Entry # 10, at 4.) The Commonwealth Court dismissed Maher's action on March 6, 2008. By Order dated November 19, 2008, the Pennsylvania Supreme Court affirmed the Commonwealth Court's March 6, 2008 decision. See Maher v. Pa. Board of Probation and Parole, No. 27 MAP 2008, 2008 WL 4926748 (Pa. Nov. 19, 2008).

## Discussion

Respondents argue that Maher is not entitled to relief because the Parole Board's

-4-

decision to deny parole did not violate Petitioner's substantive and procedural due process rights; did not contravene the Ex Post Facto Clause; and did not constitute an equal protection violation Each contention will be addressed in turn.

**Due Process**

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979). Likewise, the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. Thorpe v. Grillo, 80 Fed.Appx. 215, 2003 WL 22477890 (3d Cir. 2003)(because there is no constitutional right to parole, any substantive due process claim is foreclosed); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288, 294 (E.D. Pa. 1993).

However, the United States Court of Appeals for the Third Circuit has also held that:

> [E]ven if a state statute does not give rise to a liberty interest in parole release under Greenholtz, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons.

Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980). Accordingly, even where a state statute grants discretion to the state parole board to condition or completely deny parole, it may not permit "totally arbitrary parole decisions founded on impermissible criteria." Id. Consequently,

a federal court may review a decision by a state parole board for an abuse of discretion. Id. Upon such review, relief will only be available if an applicant can show that parole was arbitrarily denied based on some impermissible reason such as "race, religion, or political beliefs," or that the parole board made its determination based on "frivolous criteria with no rational relationship to the purpose of parole. . . ." Id. at 236 n.2.

Maher does not argue that he was denied parole on the basis of his race, religion, or ethnicity. Rather, Petitioner indicates that he was denied parole because he did not successfully complete a sex offender treatment program.[3] While the Parole Board did state that it would consider whether Petitioner successfully completed a sex offender treatment program, this was only one of multiple factors set forth in its unfavorable parole determination. Other factors which the Parole Board considered were whether Maher received a favorable recommendation from the DOC, his interview with a Parole Board representative, reports, evaluations, and assessments concerning his mental condition, and whether he maintained a clear conduct record. (Dkt. Entry # 10-3.) Thus, the decision to deny parole was not solely based upon Petitioner's failure to successfully complete a sex offender program, but rather, such failure was considered with other appropriate factors in the ultimate decision whether to grant or deny parole.

---

[3] This Court has previously held that Pennsylvania's parole regulations do not confer a predictable expectation of parole upon completion of a rehabilitation program. Charles v. Witman, Civil No. 3:CV-94-1713, slip op. at 3. (M.D. Pa. July 20, 1995)

In any event, denial of parole for failure to complete a sex offender treatment program was well within the Parole Board's considerable discretion. Petitioner asserts that he does not require sex offender treatment because he was never convicted of a sex offense. It is undisputed, however, that he was arrested in 1999 for forcing a transvestite to perform oral sex on him at knife point. As a result of that incident, Maher was charged with numerous crimes, including forcible compulsion of involuntary deviant sexual intercourse. Although this charge was later withdrawn and Maher pled guilty only to a charge of simple assault, the Parole Board's recommendation that he complete sex offender treatment as a result of the above described incident was a legitimate exercise of its discretion in fulfilling its obligation to ensure that he was suitable for release on parole. See McKune v. Lile, 536 U.S. 24 (2002) (sexual abuse treatment program serves the legitimate penological objective of rehabilitation); Carter v. Muller, 45 F. Supp.2d 453, 457 (E.D. Pa. 1999) (requiring Pennsylvania state inmate to participate in sex offender treatment even though prisoner was not presently serving a sentence for sex crime was nonetheless consistent with Parole Board's duty to ensure suitability for parole); Baldwin v. Diguglielmo, No. Civ. A. 03-6639, 2004 WL 2028906 (E.D. Pa., Sept. 10, 2004), adopting Report and Recommendation at 2004 WL 1631402 (E.D. Pa., July 19, 2004) (affirming parole requirement of participation in sex offender treatment program where petitioner had been arrested for, but not convicted of, sex offenses).

The parole determination rendered in Maher's case was not premised upon the type of

frivolous criteria which would warrant relief under Block. Accordingly, the Parole Board's October, 2007 decision did not violate due process protections.

## Ex Post Facto

Maher asserts that by applying a 2000 sex offender statute to his parole application, the Parole Board committed an ex post facto violation. His Petition describes the 2000 statute as being 42 Pa. C.S. A. § 9718.1. (Dkt. Entry # 1, ¶ 12, GROUND TWO.) Respondents assert that a viable ex post facto claim has not been raised because "Maher cannot show that the criteria applied by the Board during the parole review in October 2007 was different than that which would have been considered prior to 1996." (Dkt. Entry # 10 at 11.) Second, the Petitioner has not demonstrated "that he would have been paroled in a pre-1996 context." (Id.)

"[Section] 9718.1 provides that individuals incarcerated in a state institution for enumerated sexual offenses involving minors will not be eligible for parole unless they have participated in a Department of Corrections program of counseling or therapy designed for incarcerated sex offenders." Dodgson v. Department of Corrections, 922 A.2d 1023, 1026 n. 3 (Pa. Cmwlth. 2007). There is no indication that the Parole Board applied § 9718.1 in Maher's case. Moreover, there is no indication that Maher has ever been subjected to the requirements of § 9718.1. Hence, Petitioner 's ex post facto argument regarding § 9718.1 is meritless.

Also lacking in merit is any claim that the October 27, 2007 decision violated the Ex Post Facto Clause by applying 1996 standards. In December 1996, the Pennsylvania state

-8-

legislature amended the law governing parole, 61 Pa. Stat. § 331.1. Under the modified criteria, protection of the safety of the public is the paramount concern in making parole decisions. Specifically, the 1996 legislation decreed that "the board shall first and foremost seek to protect the safety of the public." 61 P.S. § 331.1 (Purdon's 1999).[4] The former § 331.1 made no mention of pubic safety, and in fact declared the public policy of the Commonwealth to be that parole would be a period of rehabilitation of an inmate for his restoration to society.[5]

---

[4] After amendment, section 331.1 reads in full:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (Purdon's 1999).

[5] Formerly, section 331.1 read as follows:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and

(continued...)

A new law or policy violates the Ex Post Facto Clause when it is applied to events which occurred prior to its enactment and disadvantages the offender affected by it. Weaver v. Graham, 450 U.S. 24, 29 (1981). "One function of the Ex Post Facto Clause is to bar enactments which by retroactive operation increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000); Puifory v. Reilly, No. 3:08-CV-982, 2009 WL 839354, at *5 (M.D. Pa., March 30, 2009) (retroactive application of a parole regulation which creates a significant risk of increasing the prisoner's incarceration may violate the ex post facto prohibition).

An ex post facto violation, however, is not established by merely showing that the Parole Board employed the amended statute. Taylor v. Pennsylvania Bd. Of Probation and Parole, 181 Fed. Appx. 253, 254 (3d Cir. 2006). Rather, a petitioner must show that the parole policy change was given retrospective effect and that its retrospective application created a real risk of increasing the measure of the prisoner's punishment. See Shaffer v. Meyers, 163 Fed. Appx. 111, 113-14 (3d Cir. 2006); Richardson v. Pa. Parole Board, 423 F.3d 282, 288 (3d Cir. 2005).

---

[5](...continued)
        restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

Habeas relief has been denied where it was evident that the denial of parole was based upon factors that would have resulted in the denial of parole under pre-1996 policies and practices. See Grob v. Pa. Bd. of Prob. & Parole, Civil No. 3:CV-04-0275, slip op. at 6 (M.D. Pa. Oct. 29, 2004)(Nealon, J.). In this case, it is evident that it was not the Parole Board's application of harsher laws or guidelines that prompted the October 2007 denial of reparole in Maher's case. The Parole Board's October 27, 2007 decision enumerated substantial reasons for denying parole that would have also warranted the denial of parole prior to the 1996 amendments. Petitioner has not established that the criteria at issue, participation in sex offender treatment, would not have been considered by the parole Board pre-amendment.

It is apparent that, in light of his repeated failures when previously granted parole and the circumstances surrounding his 1999 parole violation, Petitioner would have been denied reparole in October, 2007 regardless of the enactment of the 1996 amendments to the Parole Act. Furthermore, as required under Richardson, Maher has not shown that he was personally disadvantaged by the use of the 1996 amendments. Accordingly, denial of reparole did not violate the Ex Post Facto Clause.

**Equal Protection**

A litigant seeking to establish a viable equal protection claim must show an intentional

or purposeful discrimination.[6] Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert. denied, 475 U.S. 1096 (1986). However, the Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways." Reed v. Reed, 404 U.S. 71, 75 (1971). The Court of Appeals for the Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)); see also Kuhar v. Greensburg-Salem Sch. Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

In analyzing an equal protection claim a court must consider what interest or type of classification is involved. Petitioner's present claim does not involve a classification based on race, religion or national origin. "Because the distinctions at issue here do not implicate a suspect or quasi-suspect class, the state action here is presumed to be valid and will be upheld if it is 'rationally related to a legitimate state interest.'" Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 423 (3d Cir. 2000.)

In light of the circumstances surrounding his November 1999 arrest and parole violation,

---

[6] The Fourteenth Amendment of the Constitution provides in pertinent part: "No State shall . . . deny any person within its jurisdiction the equal protection of the laws."

the Parole Board's recommendation that he participate in sex offender treatment was appropriate. Moreover, there is no claim by Maher that he was treated differently from similarly situated parole applicants. Since the challenged portion of the adverse parole determination is rationally related to a legitimate penological interest, Maher's equal protection claim lacks merit.

**Conclusion**

For the reasons set forth above, the habeas corpus petition will be denied. An appropriate Order will issue.

_____
United States Circuit Judge
Sitting by Designation on the District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD M. MAHER,

    Petitioner,

v.

SUPERINTENDENT RAYMOND M. LAWLER, et. al.,

    Respondents.

CIVIL NO. 3:CV-08-411

(Judge Vanaskie)

## ORDER

**NOW, THEREFORE, THIS 23rd DAY OF JUNE, 2010,** in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **DENIED**.

2. The Clerk of Court is directed to **CLOSE** the case.

3. There is no basis for the issuance of a Certificate of Appealability.

                                      /s/ Thomas I. Vanaskie
                                      United States Circuit Judge
                                      Sitting by Designation on the District Court